**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

VICTOR SEMIDEY,

        Plaintiff,

v.                                                CV 09-1178 MCA/WPL

JOE R. WILLIAMS,
TIM LeMASTERS,
& GEORGE TAPIA,

        Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Victor Semidey seeks relief under 42 U.S.C. § 1983 against George Tapia, Warden of the Penitentiary of New Mexico ("PNM"), as well as Joe R. Williams and Tim LeMasters, employees of the New Mexico Corrections Department ("NMCD"). (Doc. 1 at 1-2; Doc. 12.) According to Semidey, the Defendants denied him visitation with his wife, Consuelo Chavez Semidey ("Consuelo"), in violation of NMCD and PNM policies and the Due Process Clause of the Fourteenth Amendment. (Doc. 1 at 3-6.) He has demanded declaratory relief, compensatory and punitive damages, and a Writ of Nisi ordering the Defendants to allow visitation. (*Id.* at 7; Doc. 3.)

In order to determine whether there is a factual and legal basis for Semidey's claims, I instructed the Defendants to file a *Martinez* report. (Doc. 13.) I informed all parties that the report might be used in deciding whether to grant summary judgment, and I informed Semidey of his right to respond to the report and to present evidence controverting the facts therein. (*Id.* at 2.) The Defendants filed their *Martinez* report on December 15, 2010 and, in it, request that Semidey's complaint be dismissed. (Doc. 14.) They assert that dismissal is appropriate because Semidey has

neither exhausted his administrative remedies nor alleged specific actions taken by any of the Defendants. (*Id.* at 5-8.) Semidey did not respond to the report.

**FACTUAL BACKGROUND**

Semidey has been incarcerated by NMCD since January 10, 2004, and he has been transferred among a number of different facilities. (Ex. 1 at 1.)[1] He is currently incarcerated in PNM. (*Id.*) Apparently, Semidey met Consuelo while he was incarcerated at Southern New Mexico Corrections Facility ("SNMCF"). She was a contract employee of Aramark Food Service at SNMCF, and she met him while working in the facility. (Ex. 2 at 3, 6.) They married at Lea County Correctional Facility ("LCCF") in December of 2006. (*Id.* at 6.)

Based on the documentation provided in the *Martinez* report, it appears that Consuelo proceeded through the proper channels to be approved as one of Semidey's visitors. She filled out the required application and indicated that she had been employed with NMCD as a contractor in Food Service in 2004. (*Id.* at 15, 17). She was approved to visit Semidey at LCCF on January 15, 2007, and presumably she had been an approved visitor in the past. (*Id.* at 14.) Semidey has claimed that he and Consuelo shared over 290 visits before her visitation was revoked, and an email from APD Corrections Administrator and Grievance Appeals Coordinator Ralph Casaus sent December 3, 2008 confirms Semidey's estimation. (Doc. 1 at 3; Ex. 2 at 8.) Her visitation privileges were revoked, however, sometime in late 2008 or early 2009.[2]

NMCD transferred Semidey back to SNMCF on October 23, 2008. (Ex. 1 at 2.) It appears

---

[1] Unless otherwise noted, all cited exhibits are attached to Doc. 14, the *Martinez* report.

[2] Semidey asserts that Consuelo was first refused visitation on March 13, 2009. (Doc. 1 at 3.) Based on the documentation provided by the Defendants, though, the Warden of SNMCF denied her application to visit Semidey on November 13, 2008. (Ex. 2 at 12.)

that, upon his return to the facility where Consuelo was previously employed, Consuelo's visitation privileges were revoked. (Ex. 2 at 12.) SNMCF Warden Mike Heredia prepared the letter denying her application to visit, stating that the application was denied because Consuelo had been an Aramark employee "having an inappropriate relationship with an inmate and that poses a security threat to this institution." (*Id.*)

NMCD has policies regarding visitation, and those policies support the Warden's decision to revoke visitation. (Ex. 5 at 1-24.) NMCD policy number CD-100201 provides, "Due to security concerns, current and/or former employees of the Corrections Department or of Department contractors will not be allowed to visit any inmate at any facility, unless they are a lawful spouse or relative and have been approved by the facility Warden." (*Id.* at 2.) The policy further states, "Inmates shall not de denied visiting privileges with persons of their choice, except when the Warden or designee can present clear and convincing evidence that such visitation jeopardizes the safety and security of the institution or others, or except as otherwise provided herein." (*Id.* at 7.)

After Semidey was transferred out of SNMCF to PNM, it appears that Semidey and Consuelo attempted to reinstate their visitation. As Semidey points out in his complaint, the PNM policy on visitation's language is different from that of NMCD: "Due to security concerns, former employees of the Corrections Department or of Department Contractors will not be allowed to visit any inmate at any facility in which they were employed." (Ex. 6 at 4.) Both Semidey and Consuelo wrote letters regarding visitation to NMCD officials in August and November of 2009, respectively. (Ex. 2 at 5, 6-7.) Semidey addressed his letter to Williams, and Consuelo addressed hers to LeMasters. (*Id.*) LeMasters responded to Consuelo's letter on September 15, 2009, affirming Warden Heredia's decision to deny her visitation privileges because she violated the rules as an employee in commencing a relationship with an inmate and because that "inappropriate

3

relationship" poses a security threat.  (*Id.* at 3.)  The letter further states that she may re-apply for visitation on an annual basis.  (*Id.* at 4.)

## DISCUSSION

A.  *Summary Judgment Standard*

Under the well-known standard, summary judgment should be granted when the record demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The record and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmovant.  *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).  In determining whether there is a genuine dispute as to a material fact, the court can rely on materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  FED. R. CIV. P. 56(c)(1)(A).  Affidavits used for this purpose "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  *Id.* at (c)(4).

To ascertain whether there are factual or legal bases to Semidey's claim, I ordered that a *Martinez* report be prepared.  (Doc. 18).  This report and the supporting documents can be used in determining whether to grant summary judgment, so long as the statements in the report are based on personal knowledge and sworn under penalty of perjury.  *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991);  *Hayes v. Marriott*, 70 F.3d 1144, 1147-48 (10th Cir. 1995) (citations omitted).  However, the court may not "accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence."  *Hall*, 935 F.2d at 1111 (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n.3 (10th Cir. 1983)).

The plaintiff's complaint and any response to the *Martinez* report can be relied on, as well, so long as they are also based on personal knowledge and sworn under penalty of perjury. *Id.* (citing *Jaxon v. Circle K Corp.*, 773 F.2d 1138, 1139 n.1 (10th Cir. 1985)). In this case, Semidey did not respond to the *Martinez* report. While the court cannot enter judgment against a party solely for failing to respond, the court may accept any facts included in the *Martinez* report that are not controverted by the complaint. *Luginbyhl v. Corr. Corp. of Am.*, 216 F. App'x 721, 723, 2007 WL 259784 (10th Cir. Jan. 31, 2007) (unpublished) (citing *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002)). If those uncontroverted facts meet the standard set out in FED. R. CIV. P. 56(c), then the court can grant summary judgment against the party. *Id.*

B.   *Exhaustion of Administrative Remedies*

The PLRA was an attempt by Congress to "eliminate unwarranted federal-court interference with the administration of prisons" and to "reduce the quantity and improve the quality of prisoner suits." *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006) (citing *Porter v. Nussle*, 534 U.S. 516, 524, 525 (2002)). To further this effort, Congress included a mandatory requirement that prisoners exhaust all administrative remedies provided by the prison before bringing a lawsuit. 42 U.S.C. § 1997e(a); *Woodford*, 548 U.S. at 94; *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). In order to exhaust administrative remedies, a prisoner must properly complete the administrative review process that is set by the facility's grievance policy. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010). This is true regardless of whether the remedy sought is actually available to the prisoner through the administrative process. *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner need not demonstrate in his complaint that he exhausted all administrative remedies, but the defendants can raise failure to exhaust as an affirmative defense. *Jones*, 549 U.S. at 216. If the prisoner does not exhaust his administrative remedies, his complaint

5

is generally dismissed without prejudice. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (citing *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1139 (10th Cir. 2005)). This allows the prisoner to refile his complaint with the court if, once he follows the proper channels and the facility has an opportunity to address the claim, the prisoner still believes the remedy was inadequate. *See Woodford*, 548 U.S. at 94.

In this case, the Defendants have raised failure to exhaust as an affirmative defense (Doc. 12 at 3; Doc. 14 at 5-6), and so I must look to the NMCD policy on administrative remedies to determine whether Semidey complied with the exhaustion requirement. The NMCD policy defines exhaustion of administrative remedies as "[t]he completion of the grievance process through the Department level appeal." (Ex. 4 at 2.) The inmate must proceed through three levels before the grievance process is complete. First, the inmate must file an informal complaint. (*Id.* at 9.) If the complaint is not resolved informally, then the inmate may file an Inmate Grievance Form, which is a formal grievance. (*Id.*) The Grievance Officer conducts an investigation based on the formal grievance and makes a recommendation to the Warden, who renders a disposition. (*Id.* at 11-12.) Finally, the Warden's decision may be appealed to the Office of the Secretary of Corrections. (*Id.* at 12.) The Grievance Administrator conducts any further investigation that is necessary and makes a recommendation to the Secretary or designee, whose decision on the grievance is final. (*Id.* at 13.) The prisoner's administrative remedies are only exhausted after the Secretary of Corrections or his designee renders a final decision.

The NMCD grievance policy provides that records must be kept of all grievances filed. (*Id.* at 13-14.) According to the affidavit of Ralph Casaus, Grievance Appeals Coordinator, he reviewed the log of grievance appeals for NMCD. (Ex. 2 at 1.) Based on that review, he concluded that Semidey has not pursued any grievance through the appeals process in 2008, 2009 or 2010. (*Id.*)

6

Based on the documentation provided, I find that there is no genuine issue as to whether Semidey exhausted his administrative remedies. He appealed no grievance from 2008 through 2010, which means that he did not complete administrative review for any grievance on any matter. Therefore, I conclude that Semidey did not satisfy the exhaustion requirement of the PLRA.

C.    *Petition for Writ of Nisi*

Semidey has also filed a Petition for a Writ of Nisi. (Doc. 3.) While I have not found any definition for a writ of nisi, a decree nisi is defined as "[a] court's decree that will become absolute unless the adversely affected party shows the court, within a specified time, why it should be set aside." BLACK'S LAW DICTIONARY *Decree* (9th ed. 2009). The decree nisi was last mentioned by the United States Supreme Court in 1925 and by the Tenth Circuit Court of Appeals in 1954. *Stephenson v. Kirtley*, 269 U.S. 163 (1925); *C.I.R. v. Evans*, 211 F.2d 328 (10th Cir. 1954). It was used in the context of adjudicating the right to a divorce and in granting preliminary relief in equity suits. 27A C.J.S. *Divorce* § 353 (2010); 27A AM. JUR. 2d *Equity* § 217 (2010). It remains in use, though sparingly, in Pennsylvania. *In re Wiencko*, 275 B.R. 772, 780 (Bankr. W.D. Va. 2002) (interpreting Pennsylvania law).

Because Semidey is a *pro se* plaintiff, I must construe his pleadings liberally. *United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991)). It appears that Semidey would like me to enter an order requiring the Defendants to allow Consuelo to visit him unless they can show good reason for the continued denial of her visitation. (Doc. 3.) As stated above, though, the policy behind the PLRA was to eliminate unwarranted interference by the federal courts with the operation of prisons. *Woodford*, 548 U.S. at 93-94. An order compelling the Defendants to allow visitation in this case would clearly be interference with the operation of the prison. Because Semidey has not exhausted his administrative

remedies, I conclude that this petition cannot be granted.

## RECOMMENDATION

For the reasons stated above, I recommend that Semidey's complaint seeking damages and relief from Williams, LeMasters and Tapia under 42 U.S.C. § 1983 (Doc. 1) be dismissed without prejudice. I further recommend that his Petition for Writ of Nisi (Doc. 3) be denied.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

/s/ William P. Lynch
William P. Lynch
United States Magistrate Judge